IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| REBECCA A. SNIDER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:12-CV-539 |
| | ) |
| CAROLYN W. COLVIN[1], Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

# REPORT AND RECOMMENDATION

Plaintiff Rebecca A. Snider ("Snider") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Specifically, Snider alleges that: (1) the denial decision fails to address the vocational expert's opinion as to the functional limitations associated with Snider's mental impairments; and, (2) the Administrative Law Judge ("ALJ") failed to give proper weight to the opinion of Snider's treating physician.

This court has jurisdiction pursuant to 42 U.S.C. § 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued all issues, and the case is ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, the arguments of counsel, and the applicable law. I conclude that the ALJ's decision is supported by substantial evidence. Accordingly, I **RECOMMEND DENYING**

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is hereby substituted for Michael J. Astrue as the defendant in this suit.

Snider's Motion for Summary Judgment (Dkt. No. 11), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 14.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Snider failed to demonstrate that she was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Snider bears the burden of proving that she is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in any and all forms of substantial gainful employment given the claimant's age, education, and work experience. See 42 U.S.C. § 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment;[2] (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## STATEMENT OF FACTS

### Social and Vocational History

Snider was born on July 29, 1963 (Administrative Record, hereinafter "R." at 203), and was considered a younger person under the Act on her alleged onset date. R. 81; 20 C.F.R. § 416.963. Snider has a ninth grade education. R. 42. Snider worked intermittently as box closer from 1991–1998, which was evaluated by a vocational expert as a medium exertion, unskilled work. R. 57. Snider also worked as a self employed house cleaner from 2004–2008, which was evaluated by a vocational expert as unskilled, light exertion work. R. 42–44, 234.

---

[2] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of her or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

Snider reported that during the relevant period, she had the capacity to feed her animals, take her older dog out, make her bed, get dressed, run errands, and fix supper. R. 253.

## Claim History

Snider protectively filed for SSI on December 10, 2008, claiming that her disability began on June 15, 2008. R. 26, 202. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 93, 105. On May 11, 2011, Administrative Law Judge ("ALJ") Joseph T. Scruton held a hearing to consider Snider's disability claim. R. 32–71. Snider was represented by an attorney at the hearing, which included testimony from Snider and vocational expert James B. Williams. R. 33–64.

On May 27, 2011, the ALJ entered his decision denying Snider's SSI claim. R. 16–25. The ALJ found that Snider suffered from the severe impairments of multiple sclerosis ("MS"), degenerative disc disease of the cervical spine with left C7 sensory radiculopathy, and anxiety. R. 18. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 18. The ALJ further found that Snider retained the residual functional capacity ("RFC") to perform sedentary work that allowed for the use of a cane for ambulation; involved occasional overhead reaching, and less than constant handling, fingering, or non-overhead reaching; and tasks that involved following short, simple instructions. R. 18. The ALJ determined that Snider could not return to her past relevant work as a house cleaner, or package sealer/box closer (R. 23), but that Snider could work at jobs that exist in significant numbers in the national economy: namely order clerk, officer addresser, or ampoule

sealer.[3] R. 24. Thus, the ALJ concluded that she was not disabled. R. 25. On October 3, 2012, the Appeals Council denied Snider's request for review (R. 1), and this appeal followed.

## ANALYSIS

### Vocational Expert Hypothetical

Snider alleges several errors relating to the vocational expert's testimony in this case. Specifically, Snider claims that the ALJ failed to include limitations from her mental impairments in the hypothetical presented to the vocational expert. Snider also argues that the ALJ failed to incorporate all provisions of the vocational expert's testimony into the denial decision, and further, that the jobs identified by the vocational expert are not consistent with the restrictions imposed by the RFC.

At the administrative hearing, the ALJ asked the vocational expert to determine the number of jobs available for an individual with Snider's vocational background, who has the residual functional capacity to perform unskilled, sedentary work, with occasional overhead reaching; frequent, but not constant, reaching, handling and fingering; and occasional use of a cane. R. 58. The vocational expert testified that such an individual could work as an office addresser, order clerk or ampoule sealer. R. 59.

The purpose of a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). A vocational expert's opinion must be given in response to proper hypothetical questions, which fairly set out all of the claimant's impairments. Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) (quoting Walker, 889 F.2d at 50). The ALJ has "some discretion to craft hypothetical questions to communicate to the vocational expert

---

[3] In the transcript and the ALJ opinion, ampoule sealer is spelled incorrectly as "ampule" (R. 24, 63), the correct spelling is ampoule. Regardless of the spelling error, the vocational expert gives the correct corresponding DOT code, SVP value, and, general aptitude value for ampoule sealer: DOT 559.687-014.

5

what the claimant can and cannot do." Fisher v. Barnhart, 181 F. App'x 359, 364 (4th Cir. 2006). Hypothetical questions should adequately reflect the plaintiff's residual functional capacity as found by the ALJ and supported by sufficient evidence. Id.

Snider claims that the ALJ erred by not including the limitation contained in the RFC that she can "maintain attention and concentration well enough to perform tasks that involve following short, simple instructions" in the hypothetical to the vocational expert. However, the ALJ restricted the individual in the hypothetical to unskilled work, which accounts for a limitation of following short, simple instructions. See Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *4 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."); see also 20 C.F.R. § 416.968(a)(defining unskilled work as work that needs little or no judgment and consists of simple duties that can be learned on the job in a short period of time.) Thus, the ALJ's hypothetical question to the vocational expert fully incorporated all of the limitations set forth in the ALJ's denial decision, including the RFC assessment for following short, simple instructions.

### Dr. Tessnear's Opinion

Snider also claims that the ALJ's denial decision did not clearly evaluate and account for the findings of psychologist Pamela S. Tessnear, Ph.D., concerning Snider's concentration and confusion. Pl's Br. at 5. On February 7, 2011, Dr. Tessnear performed a psychological evaluation of Snider at the request of her attorney. R. 406–14. Snider drove herself to the evaluation and filled out the intake forms without assistance. R. 406. She denied depressive symptoms and reported mild anxiety. R. 407. She reported feeling like her brain is "in a fog,"

6

and also admitted daily marijuana use. R. 406–8. Dr. Tessnear administered a Personality Assessment Inventory, which indicated that Snider was alert, optimistic, and effective with few concerns about her health and "very low" anxiety. R. 410. Dr. Tessnear found Snider's personality inventory scores to be questionable and inconsistent with her medical records that diagnose depression, anxiety and MS. R. 412–13.

On mental status examination, Snider cooperated, maintained good eye contact, but seemed guarded or evasive. R. 411. Snider was oriented and able to manage her daily activities; although her insight was uncertain and appeared limited. R. 411. Dr. Tessnear found that Snider had several lapses in memory which might suggest confusion or loss of memory. Dr. Tessnear also found that Snider's attention was variable and her concentration was poor. R. 410. However, Snider's thought content, process, and perception were normal. R. 410. Dr. Tessnear assigned Snider a GAF of 60,[4] and from a functional standpoint, found:

> Ms. Snider is able to understand and follow simple instructions. However her attention span is limited and concentration is poor. She cannot maintain focus for extended periods and she is easily confused. She would have some trouble learning new work or adjusting to changes because of confusion. She is able to get along with supervisors, co-workers and the public. Attendance and persistence are more likely to be impacted by her reported physical complaints than by psychiatric ones.

R. 414.

Snider's allegation that the ALJ does not expressly credit or incorporate into the RFC Dr. Tessnear's findings concerning Snider's concentration and confusion is groundless. The ALJ expressly considered Dr. Tessnear's findings with regard to Snider's concentration and confusion, found them to be well-supported, and gave them significant weight. R. 21, 23. Based upon Dr. Tessnear's evaluation, as well as the record as a whole, the ALJ found that Snider

---

[4] The Global Assessment of Functioning is a numeric scale ranging from 0 to 100 used by mental health professionals to rate social, occupational and psychological functioning "on a hypothetical continuum of mental health illness." Diagnostic and Statistical Manual of Mental Disorders, 32 (4th Ed. Am. Psychiatric Ass'n 1994) ("DSM IV"). A score of 51-60 suggests moderate symptoms or difficulty in social or occupational functioning. Id.

suffered mild to moderate limitations in concentration, persistence or pace, and adopted Dr. Tessnear's recommended limitation that Snider be restricted to tasks that involve following short, simple instructions. R. 23.

Snider asserts that Dr. Tessnear's opinion "would seem to support [mental] limitations of greater severity than 'mild to moderate.'" Pl's Br. at 4–5. In determining Snider's RFC, the ALJ considered not only Dr. Tessnear's opinion, but also the other evidence of record relating to Snider's anxiety and other mental limitations. Specifically, the ALJ noted that although Snider was diagnosed with anxiety disorder, she never sought treatment from a mental health professional. The treatment notes from Snider's family practitioner indicate that her anxiety was controlled with medication. R. 335, 342, 345, 347, 376–77, 389–90, 394–95, 400–01. Snider denied symptoms of anxiety during her evaluation with Dr. Tessnear, and stated that she was in a "fog," and used marijuana daily. R. 406–08. Based on this evidence, the ALJ reasonably found that Snider suffered "mild to moderate" limitations in concentration, persistence and pace.

Snider also alleges that the ALJ did not properly account for the vocational expert's testimony that based upon Dr. Tessnear's report, Snider would be "off-task" thirty to forty percent of the day, which is inconsistent with substantial gainful activity. Pl's Br. at 4–5. At the administrative hearing, Snider's attorney read portions of Dr. Tessnear's report to the vocational expert:

> Atty: "She often seems confused, but unconcerned. Feeling foggy and unclear in her thinking. Her confusion is evident during the interview. Lack of cognitive clarity." I think she refers to it as "liable indifference." And then under functional information, "Her attention span is limited and concentration poor. She cannot maintain focus for extended periods and she is easily confused."
>
> VE: How is poor defined?
>
> Atty: It's not defined. This is a narrative report.

> VE: Okay.
>
> Atty: She would have some trouble learning new work and adjusting to change because of confusion? Is there any way you could translate that to functional limitations that you could tell us whether or not would impact the jobs that you've identified.
>
> VE: It would appear that she might be off task from thirty to forty percent. Again, I didn't write the – I'd have to refer back to the author of that report. But if that's what she's indicated, that she would be off task at least thirty to forty percent of the work day— And that's what the fog was leading me to think—
>
> ALJ: Well, lets not get so much into taking symptoms for vocational purposes. Lets just go with the functional information part of it. But what you're saying is, if that's interpreted as meaning that the individual would be off task from their work for thirty to forty percent of their time or more, then that would be incompatible with work performance?
>
> VE: Yes. That would suggest that the individual wouldn't be able to be productive in an eight hour work day.

R. 62–63.

The vocational expert's testimony that Dr. Tessnear believed that Snider would be off-task thirty to forty percent of the time is conjecture, based upon a small portion of Dr. Tessnear's report. Dr. Tessnear made no such finding. Rather, Snider's counsel asked the vocational expert to "translate [Dr. Tessnear's report] to functional limitations." R. 63. In so doing, Snider's counsel did not present the full report to the vocational expert, and did not include the first sentence of the relevant paragraph from Dr. Tessnear's opinion, which states, "Ms. Snider is able to understand and follow simple instructions." R. 62–63, 414. It is well established that for a vocational expert's opinion to be relevant, it must be in response to a proper hypothetical question that sets forth all of the claimant's impairments. Young v. Astrue, 771 F. Supp. 2d. 610, 623 (S.D. W. Va. 2011)(citing Walker, 889 F.2d at 50–51).

9

Additionally, vocational experts are tasked with testifying about the availability of jobs that an individual can perform given specific work-related limitations and vocational factors. Translating a physician's statements into functional limitations is not the role of a vocational expert, but rather, is the purview of the ALJ. Brown v. Astrue, Civ. Action No. CBD-10-1238, 2013 WL 937549, at *6 (D. Md. Mar. 8, 2013)("It is the ALJ's role to translate the claimant's medical impairments into functional limitations from which the vocational expert can determine whether work is available.") See also Fisher v. Barnhart, 181 F. App'x 359, 365 (4th Cir. 2006)("Vocational experts are not experts in psychology who are qualified to render opinions on how the claimant's ailments might be reflected in his capabilities; rather, they are employment experts who know the mental and physical demands of different types of work.")

Here, the ALJ reasonably accounted for Dr. Tessnear's opinion, which he gave significant weight. As the ALJ observed, Dr. Tessnear found that Snider had sufficient attention and concentration to perform tasks involving short, simple instructions; thus the ALJ included a limitation of unskilled work in the hypothetical to the vocational expert. R. 23, 414. Accordingly, I conclude that the hypothetical given to the vocational expert adequately accounted for all impairments reflected in the record.

### Representative Occupations

Snider contends that the RFC limiting her to only short, simple instructions eliminates her from consideration of any job with a reasoning level of two or higher as defined by the Dictionary of Occupational Titles ("DOT"). Snider argues that a remand is appropriate here to require the ALJ to elicit from the vocational expert an explanation of whether the RFC would permit her to perform the recommended jobs.

Each job listed in the DOT has a reasoning skill level that gauges the minimal ability a worker needs to complete the job's tasks. Meissl v. Barnhart, 403 F. Supp. 2d 981, 983 (C.D. Ca. 2005). A job rated at a reasoning level of one requires the ability to "[a]pply commonsense understanding to carry out simple one-or two-step instructions," whereas a job rated at a reasoning level of two requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." DOT, App. C § III, 1991 WL 688702. Snider argues that a restriction of following short simple instructions corresponds with reasoning level of one, and thus it was error for the ALJ to rely upon the occupations identified by the vocational expert—office addresser, order clerk, and ampoule sealer—which are classified as reasoning level two. See office addresser, DOT 209.587-10, 1991 WL 671797; order clerk, DOT 209.567-014, 1991 WL 671794; ampoule sealer, DOT 559.687-014, 1991 WL 683782.

Several courts in the Fourth Circuit have addressed whether a person limited to work involving simple, repetitive, routine tasks can perform a job with a reasoning level of two. See Taylor v. Astrue, 5:1O-CV-263-FL, 2011 WL 1599679 (E.D.N.C. Mar. 23, 2011); Dillon v. Astrue, Civ. Action No. TMD 08-2597, 2011 WL 337334, at *5 (D. Md. Jan. 31, 2011); Pippen v. Astrue, No. 1:09cv308, 2010 WL 3656002, at *7–*8 (W.D.N.C. Aug. 24, 2010); Burnette v. Astrue, No. 2:08–CV–9–FL, 2009 WL 863372, at *5 (E.D.N.C. Mar. 24, 2009).

In Burnette v. Astrue, the court noted that case law within the Fourth Circuit is divided as to whether a limitation of simple, routine, repetitive tasks can properly correspond to a DOT reasoning level of two. No. 2:08cv0009-FL, 2009 WL 863372, at *5 (E.D.N.C. March 24, 2009). In Burnette, the court followed the approach set forth in Meissl v. Barnhart, 403 F. Supp. 2d 981, 983 (C.D. Ca. 2005), where the court reasoned:

> The Social Security regulations separate a claimant's ability to understand and remember things and to concentrate into just two categories: "short and simple

11

> instructions" and "detailed" or "complex" instructions. 20 C.F.R.
> § 416.969a(c)(1)(iii); *see also* 20 C.F.R. part 404, subpart P, Appendix 1, Listing
> 12.00C(3)("You may be able to sustain attention and persist at simple tasks but
> may still have difficulty with complicated tasks"). The DOT, on the other hand,
> employs a much more graduated, measured and finely tuned scale starting from
> the most mundane ("simple one- or two-step instructions" at level one), moving
> up to the most complex ("applying principles of logical or scientific thinking ...
> apprehend the most abstruse classes of concepts" at level six). DOT at 1010–
> 1011. To equate the Social Security regulations use of the term "simple" with its
> use in the DOT would necessarily mean that all jobs with a reasoning level of two
> or higher are encapsulated within the regulations' use of the word "detail." Such a
> "blunderbuss" approach is not in keeping with the finely calibrated nature in
> which the DOT measures a job's simplicity. Even more problematic for
> [claimant's] position is that she ignores the qualifier the DOT places on the term
> "detailed" as also being "uninvolved." This qualifier certainly calls into question
> any attempt to equate the Social Security regulations' use of the term "detailed"
> with the DOT's use of that term in the reasoning levels. Instead of simply seeking
> to equate the two scales based on the serendipity that they happen to employ the
> same word choice, a much more careful analysis is required in comparing the
> claimant's RFC with the DOT's reasoning scale.

Meissl v. Barnhart, 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005). The Meissl court concluded that a plaintiff limited to "simple, routine, repetitive tasks" was capable of performing jobs at the DOT reasoning level of two. The Burnette court likewise held that the ALJ's limitation of plaintiff to 'simple routine repetitive tasks' is not inconsistent with jobs at the DOT reasoning development level of two. 2009 WL 863372, at *5. See also Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005)(holding that "level-two reasoning appears more consistent with plaintiff's RFC" to "simple and routine tasks"); Money v. Barnhart, 91 F. App'x 210, 214, 2004 WL 362291, at *3 (3d Cir. 2004)("Working at reasoning level 2 would not contradict the mandate that the work be simple, routine and repetitive"); see generally Charles v. Astrue, No. 07–1172, 2008 WL 4003651, at *4 (W.D. La Aug. 7, 2008)(collecting cases holding reasoning two level is consistent with an RFC to perform simple, routine tasks.)

I find persuasive the Meissl court's logic that a reasoning level of two is not inconsistent with tasks that involving following short, simple instructions. As noted above, Snider's RFC

corresponds with unskilled work, which involves understanding, carrying out, and remembering simple instructions; responding appropriately to supervision, coworkers, and usual work situations; and to dealing with changes in a routine work setting. As more fully set forth in the cases cited above, these limitations are proportionate to DOT reasoning level two.[5] Thus, it was not error for the ALJ to conclude that Snider could perform work as an office addresser, order clerk and ampoule sealer.

## Treating Physician Opinion

Snider claims that the ALJ erred by giving the opinion of her treating physician Kenneth E. Jones, M.D., "little weight," when developing Snider's RFC. Dr. Jones completed a residual functional capacity questionnaire on May 10, 2011, finding that Snider can stand and walk less than two hours a day, and sit about four hours in an eight-hour workday. R. 417. Dr. Jones found that Snider's pain and other symptoms would frequently interfere with attention and concentration and that she would likely be absent from work more than four times a month. R. 417–18.

A treating physician's opinion is not automatically entitled to controlling weight. The social security regulations require that an ALJ give the opinion of a treating source controlling weight, if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). The ALJ must give "good reasons" for not

---

[5] The Commissioner argues that the jobs identified by the vocational expert correspond with the appropriate specific vocational preparation ("SVP") scores set forth in the regulations and in the DOT, and thus it is improper to rely upon the reasoning levels in the DOT as evidence of mental demands for the identified jobs. The SVP level in a DOT listing is focused on the amount of lapsed time it takes for a typical worker to learn the job's duties. Meissl v. Barnhart, 403 F. Supp. 2d 981, 983 (C.D. Ca. 2005). The SVP level is different from the reasoning level, which gauges the minimal ability a worker needs to complete the job's tasks themselves. Id. In Meissl, the court held that vocational considerations of a job's simplicity correspond to the job's reasoning level, thus the court must consider both the SVP and the reasoning level when determining if substantial evidence supports the jobs identified by the vocational expert. Id.

affording controlling weight to a treating physician's opinion. Id.; Saul v. Astrue, Civ. Action No. 2:09-cv-1008, 2011 WL 1229781 (S.D. W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010).

There is substantial evidence in the record to support the ALJ's decision to give little weight to Dr. Jones's assessment. The ALJ noted Snider's long-term treatment relationship with Christiansburg Family Medicine, and specifically Dr. Jones. However, upon a review of the record as a whole, the ALJ found that Snider's treatment records, including those from Christiansburg Family Medicine, did not support Dr. Jones's restrictive opinion.

Snider was previously diagnosed with relapsing-remitting MS. R. 297. Snider's MS has been repeatedly termed "mild," and Snider's progress notes contain little documentation of MS flare-ups. R. 296–98, 301, 382–83, 386–87. Indeed, Snider's neurological evaluations consistently revealed normal cortical functions, cranial nerves, sensation, reflexes, and gait; only "mild" weakness in Snider's left arm; and no abnormal cerebellar signs or tremors. R. 338, 340. Dr. Jones only performed one neurological examination before finding Snider to be disabled.

R. 416.  At that examination, Snider had hyperactive reflexes, a positive Babinski sign,[6] "mildly" decreased lower extremity strength, and normal strength in her arms. R. 416.

Snider's treating neurologist, Rollin Hawley, M.D.,  routinely described Snider as having mild relapsing-remitting MS. R. 23, 296–98, 382–84, 386–87.  In May 2008, Dr. Hawley described Snider's neurological examination as "remarkably good," showing only decreased equilibration of tandem bait with eyes open. R. 297.  Aside from being "a little" hyperreflexic, Snider's neurologic examination was completely normal. R. 297.  Throughout Dr. Hawley's treatment notes, Snider's neurological exams remain normal, side from decreased equilibrium on tandem gait. R. 296, 383, 387.

Snider was also diagnosed with degenerative disc disease of her cervical spine with left C7 sensory radiculopathy, but there is no evidence that the condition has required ongoing management.  Snider's progress notes document routine office visits with her treating physicians to refill medications.  R. 333–48, 376–77, 389–405.  The ALJ noted that state agency physicians found Snider capable of performing work at the light and medium levels of exertion. R. 22, 73–77, 88–89.  Considering the record as a whole, the ALJ limited Snider to sedentary work, with occasional use of a cane for ambulation, and restrictions on handling, fingering, overhead and non-overhead reaching. R. 22.  Given the evidence set forth above, I find substantial support for the ALJ's decision not to adopt the restrictive limitations set forth by Dr. Jones, but instead find that Snider is capable of a limited range of sedentary work.

Snider further argues that the ALJ did not properly discuss all of the factors under 20 C.F.R. § 404.1527(c) when evaluating Dr. Jones's opinion. While the regulations require the ALJ to consider all six factors, the ALJ is "not required to make a seriatim assessment as if it

---

[6] The Babinski reflex occurs after the sole of the foot has been firmly stroked. The big toe then moves upward or toward the top surface of the foot, and the other toes fan out. http://www.nlm.nih.gov/medlineplus/ency/article/003294.htm

were a sequential evaluation." Vaughn v. Astrue, No. 4:11-cv-29, 2012 WL 1267996, at *5 (W.D. Va. Apr. 13, 2012).  In this case, the ALJ considered Dr. Jones's treatment notes and his examining and treating relationship with Snider but found that Dr. Jones's opinion was not supported by or consistent with his treatment records or the record as a whole. R. 21–23.

**RECOMMENDED DISPOSITION**

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **GRANTING** the Commissioner's Motion for Summary Judgment, **DENYING** Snider's Motion for Summary Judgment, and **DISMISSING** this case from the court's docket.  The clerk is directed to transmit the record in this case to the Honorable Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days.  Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

Enter:  February 10, 2014

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge